## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BRUCE CONGE,                          :
        Plaintiff,              :
                             :
        v.                     :        Case No. 3:05-cv-1650 (PCD)
                             :
SIKORSKY AIRCRAFT CORPORATION, :
        Defendant.               :

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Bruce Conge brings this employment discrimination action alleging that he was

unlawfully terminated from his employment by Defendant Sikorsky Aircraft Corporation

("Sikorsky") because of his mental health disability. On September 7, 2007, Defendant Sikorsky

moved for summary judgment on all four counts of Plaintiff's Complaint. For the reasons stated

below, Defendant's Motion for Summary Judgment [Doc. No. 41] is **granted**.

## I.      BACKGROUND

Defendant Sikorsky, a corporation in the business of designing, manufacturing, and

servicing military and commercial helicopters, hired Plaintiff Conge in August, 1977. (Compl. ¶

3; Def.'s Local R. 56(a)(1) Statement ¶ 1.) In 1989, Conge voluntarily left Sikorsky to work for

a small company, but he was rehired by Sikorsky into the Contracts Administration Department

in October, 1998. (Pl.'s Dep. at 98; Def.'s Mot. for Summ. J., Ex. C.) Eventually, Mr. Conge

was promoted to the position of Senior Manager, Financial Planning and Analysis, in which he

was responsible for planning, forecasting, and comparing financial activity, a position he held at

the time of his termination in January, 2004. (Pl.'s Dep. at 61-72; Affidavit of Paul Trompetter

("Trompetter Aff.") ¶¶ 5, 11.) Prior to his termination, Mr. Conge had amassed an excellent

employment record and had obtained top-secret security clearance to work on highly classified

projects.  (Pl.'s Dep. at 37, 61-62.)  Defendant maintains that, given the top secret nature of much

of Mr. Conge's work at Sikorsky, he could not work remotely, and therefore it was essential that

he go to work at his office in order to fulfill his job duties.  (Def.'s Local R. 56(a)(1) Statement

¶¶ 40-43.)  Plaintiff asserts in his brief that there was a period of time during which it was not

critical that he be present at the workplace (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 6), but the

evidence to which he cites does not support that assertion.  (See Pl.'s Dep. at 64.)[1]

　　　　For the last five or six years of his employment at Sikorsky, Plaintiff suffered from

depression.  He was first diagnosed with depression in 1998, and over the course of the past ten

years he has received psychiatric treatment and taken various medications to treat his disability.

(Pl.'s Dep. at 25-29, 35.)  In early 2003, Plaintiff began the first of three extended sets of

absences from work caused by a manifestation of severe depression, and he notified his

supervisor and a member of the human resources department of his condition.  (Id. at 47.)  On

January 17, he began an absence from work that lasted until May 27, 2003, missing a total of

ninety-six consecutive work days.  (Pl.'s Dep. at 54; Def.'s Local R. 56(a)(1) Statement ¶ 10.)

Plaintiff reported three of these absences as funeral leave, ten as vacation days, and the remainder

---

[1]　　　　The Court notes that Plaintiff has submitted little evidence in opposition to Defendant's
motion for summary judgment.  In fact, the only evidence presented is a transcript of Plaintiff's
deposition, the citations to which in Plaintiff's brief and Local Rule 56(a)(2) Statement are often
incorrect and misleading.  (See, e.g., Pl.'s Local R. 56(a)(2) Statement ¶¶ 10, 12, 14, 25, 27, 29, 31-33,
35, 40-46, 50, 57-61, 65.)  The Court reminds Plaintiff's counsel that while the evidence is taken in the
light most favorable to the nonmoving party, the repeated and voluminous references in Plaintiff's papers
to citations in the transcript which do not support the Plaintiff's assertions, in addition to reflecting
poorly on the plaintiff, allow the Court to deem several material facts in Defendant's Local Rule 56(a)(1)
Statement admitted.  See Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002)
("Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of
the record to find proof of a factual dispute."); Lachira v. Sutton, No. 3:05cv1585 (PCD), 2007 WL
1346913, at * 5 (D. Conn. May 7, 2007) ("When a party fails to appropriately deny material facts set
forth in the movant's Local Rule 56(a) 1 statement, those facts are deemed admitted.").

as sick leave.  (Id. ¶ 11.)  During this period of severe depression, Plaintiff rarely ate, rarely left

his house, often could not get out of bed, and lost approximately 25 pounds.  (Pl.'s Dep. at 54,

57.)  On at least one occasion he told his supervisor that he would be returning to work but then

did not show up.  (Def.'s Local R. 56(a)(1) Statement ¶ 16.)

The parties dispute the way in which Plaintiff handled his extended absence in early 2003

and whether his conduct violated Sikorsky's work absence policy.  Sikorsky's work absence

policy requires employees to notify and obtain prior permission from their supervisors when

feasible.  Where employees are unable to obtain prior permission, they are required to report their

absences from work "promptly at the start of the absence assuming circumstances permit" and

advise their supervisors of their anticipated return date.  (Def.'s Local R. 56(a)(1) Statement ¶¶

13, 18.) Defendant contends that Plaintiff did not inform his supervisor of his condition nor

explain his need for these absences during this period, and managers at Sikorsky contacted Mr.

Conge numerous times by telephone and in writing to inquire into his well-being and ability to

return to work.  (Id. ¶¶ 12, 19.)  According to Defendant, it did not receive a definitive return-to-

work date or an explanation from a doctor documenting Mr. Conge's need to be absent from

work in early 2003 (id. ¶ 19), but Plaintiff states that he filled out the necessary medical forms to

document his absence whenever requested to do so by Defendant.  (Pl.'s Dep. at 47-48.)  In

March, Mark Pagé, the Sikorsky human resources manager, sent Mr. Conge a letter stating that

numerous attempts were made by Sikorsky to clarify the reasons for his absences and to ascertain

a return date.  Pagé also wrote in this letter that Conge's failure to provide documentation for his

absence before March 31, 2003 would result in termination of his employment.  (Def.'s Local R.

56(a)(1) Statement ¶ 21.)  On March 26, 2003, Mr. Conge supplied Sikorsky with medical

documentation of his diagnosis and conditions and the projected date that he would return to work.  (Compl. ¶ 9.)

Prior to his severe depression, Plaintiff had scheduled two pre-paid vacations, a golf vacation with several friends and a family trip to Mexico, to take in February and March of 2003. (Pl.'s Dep. at 55.)  During his absence from work in early 2003, Mr. Conge consulted with his psychiatrist as to whether he could go on his prearranged vacations.  Because his doctor advised him that participating in such recreational activity could not harm him and could possibly help him, Mr. Conge went on both vacations during his early 2003 absence from work.  On at least one of the days of his trips, Plaintiff was unable to get out of bed, and the remainder of the trips were very difficult for him.  (Id.)

The record is unclear as to the subsequent chronology of events.  On March 28, 2003, Plaintiff provided Sikorsky with a note from his doctor stating that he was "able to return to work without restrictions."  (Def.'s Local R. 56(a)(1) Statement ¶ 26, Ex. H.)  Plaintiff testified at his deposition that he did not ever tell Sikorsky exactly when he would be coming back to work full time because he and his doctor never set a firm return date.  According to Plaintiff, they only talked about target dates to return to work based on how he felt from day to day.  (Pl.'s Dep. at 65.)  Defendant presented human resources records showing that Plaintiff did not return to work at the end of March (see Affidavit of Mark Pagé, Attach. 1 at 2), but Plaintiff testified at his deposition that he returned to work after being told that he would be terminated by March 31st if he did not return.  (Pl.'s Dep. at 70.)  According to Plaintiff, he then worked for a period of two months, during which he had severe difficulty concentrating, absorbing things that he read, and communicating with other employees.  (Id. at 71-72.)

The parties agree that on or about May 28, 2003, Sikorsky allowed Mr. Conge to return to work on a part-time basis. Mr. Conge nevertheless remained absent every day until June 5, 2003. (Def.'s Local 56(a)(1) Statement ¶ 29.) On July 14, 2003, Plaintiff returned to work on a full-time basis. (Id. ¶ 30.) Throughout the summer and fall of 2003, however, Plaintiff again took extensive leave from work. Between June 3rd and September 11, he was absent from work on 22 days. (Id. ¶ 31.) On several occasions during this period, Mr. Conge notified his supervisor that he was taking a vacation day on the day of the actual absence. (Id. ¶ 32.) In mid-September, Mr. Conge began another set of extended absences from work, missing an additional 45 days of work between September 17, 2003, and the end of the year. (Id. ¶ 33.) During the fall of 2003, Plaintiff on several occasions told his supervisor that he would return to work the next day but then would not show up or would leave after only a few hours. (Id. ¶ 35.) Defendant also contends that Mr. Conge did not provide proper documentation detailing the need for these absences or a projected return date (id.), though Plaintiff asserts that he always provided whatever documentation the defendant requested. On October 1, 2003, Plaintiff's supervisor notified him by email that his absences were negatively affecting work flow (id. ¶ 38), and Plaintiff concedes that he did not perform any of his job functions during his absences. (Id. ¶ 39; Pl.'s Local Rule 56(a)(2) Statement ¶ 39.)

On October 9, 2003, human resources manager Mark Pagé tried to contact Mr. Conge by mail, asking for an update on his absence. (Def.'s Local R. 56(a)(1) Statement ¶ 44.) Mr. Conge telephoned Mr. Pagé in response but did not provide a return date. (Id. ¶ 45.) On October 23, 2003, Mr. Pagé again contacted Mr. Conge by mail, stating that he was making a final attempt to resolve Conge's return-to-work date and employment status and that Conge must provide proper

documentation for all absences no later than October 30, 2003, or face termination. (Id. ¶¶ 47, 48.) In response, Conge told Pagé that he would return to work on or about November 5, 2003. (Id. ¶ 49.) However, Conge failed to return to work until November 10th, when he worked for only two days and then missed most of the remaining work days of the year. (Id. ¶¶ 50-52.) On November 18, 2003, Pagé again contacted Plaintiff by letter requesting clarification of his absences, reminding Conge that he would exhaust all available sick leave days by November 26, 2003, and warning him that his employment would be terminated if he did not return to work by December 1. (Id. ¶¶ 53, 54.)

Throughout 2003, Plaintiff thought he was doing nothing more than taking sick time that he had accrued when he was entitled to do so. (Pl.'s Dep. at 128.) Sikorsky sick leave policy provides employees with more than one year of continuous service with ten days of sick leave for the calendar year hired, plus five days for each additional year of continuous employment. (Def.'s Local R. 56(a)(1) Statement ¶ 55.) Over the years of working for Sikorsky, Conge had accrued approximately 125 days of sick leave, and he maintains that he did not use of all of this sick leave during his period of severe depression in 2003. (Pl.'s Dep. at 52.)

Conge's absences continued into 2004. He went to work only twice during the first two weeks in January 2004, and he reported these absences as sick days. According to Defendant, however, Conge had exhausted his sick leave at that point and had not been present for five full work days with thirty continuous days of service as required by Sikorsky policy to reestablish sick leave benefits. (Def.'s Local R. 56(a)(1) Statement ¶¶ 57-61.) On January 15, 2004, Sikorsky terminated Conge's employment for "excessive absenteeism," and Sikorsky notified him of his termination by mail. (Id. ¶ 62.) Following his termination, Conge collected

unemployment compensation for six months and then took a position at Pitney Bowes of Stamford, Connecticut. (Id. ¶ 65.) After six months at Pitney Bowes and eighteen months at Kaman Aerospace in Middletown, Connecticut, Plaintiff accepted a position at Irvin Aerospace in California, where is he is currently employed as vice president of contracts, legal, and pricing. (Id. ¶¶ 65-67.)

On May 19, 2004, Plaintiff filed a charge with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") claiming that he was discharged by Sikorsky because of his disability, in violation of several federal and state laws. After receiving a release from the CCHRO, Plaintiff sued Sikorsky in the Connecticut Superior Court, Judicial District of New Haven at New Haven. On October 24, 2005, Sikorsky removed the case to District Court. Conge claims that Sikorsky violated: the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-58(a) (Compl. ¶ 26, First Count); Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 2000e (Compl. ¶ 26, Second Count); the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 et seq. (Compl.¶ 26, Third Count); and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 793 et seq. (Compl. ¶ 26, Fourth Count). Plaintiff also brings claims for intentional infliction of emotional distress (id. ¶¶ 26-28, Fifth Count) and wrongful termination in violation of public policy. (Id. ¶ 26, Sixth Count.) Defendant has moved for summary judgment on all six counts of Plaintiff's Complaint.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v.Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 225. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). Where, as here, the non-moving party "'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Amaker v. Foley,

274 F.3d 677, 681 (2d Cir. 2001)); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95,

110 (2d Cir. 2006); Sloane v. Getz, 150 Fed. Appx. 86, 88 (2d Cir. 2005).  Even unopposed

motions for summary judgment must "fail where the undisputed facts fail to show that the

moving party is entitled to judgment as a matter of law."  D.H. Blair, 462 F.3d at 110 (quoting

Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)) (internal quotation marks omitted).

## III.    DISCUSSION

Defendant Sikorsky has moved for summary judgment on all six counts of Plaintiff's

Complaint.  Defendant argues that Plaintiff's claims for violations of CFEPA, the ADA, and the

Rehabiliation Act must fail because Plaintiff cannot show that he is disabled by the ADA, cannot

show that he could perform the essential functions of his job with or without a reasonable

accommodation, and cannot show that Sikorsky terminated his employment for any reason other

than his absences.  Defendant also argues that Plaintiff's Title VII claim must fail because he

does not allege that he is a member of a protected class.  Finally, Defendant argues that

Plaintiff's state tort claims must fail because Sikorsky's actions did not amount to extreme and

outrageous conduct and because Plaintiff cannot recover under a common law wrongful-

discharge theory when other statutory remedies are available.

### A.    Plaintiff's Disability Discrimination Claims Alleging Violations of CFEPA, the ADA, and the Rehabilitation Act

Conge's disability discrimination claims are analyzed under the three-step burden shifting

framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Texas

Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), and St. Mary's Honor

Center v.  Hicks, 509 U.S. 502, 519, 524 (1993).  See, e.g., Reg'l Econ. Cmty. Action Program,

Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir.), cert. denied, 537 U.S. 813 (2002)

(applying McDonnell Douglas to ADA and Rehabilitation Act claims); Woodman v. WWOR-

TV, Inc., 41 F.3d 69, 76 (2d Cir. 2006) (same for Title VII); Craine v. Trinity Coll., 259 Conn.

625, 636-37 (2002) (same for Connecticut state law discrimination claims).  Under this standard,

a plaintiff has the initial burden of a demonstrating a prima facie case of discrimination.  Reg'l

Econ. Cmty. Action Program, 295 F.3d at 49.  The establishment of a prima facie case gives rise

to a presumption of unlawful discrimination, Woodman, 41 F.3d at 76, and the burden of

production shifts to the defendant.  If the defendant then proffers a "legitimate,

nondiscriminatory reason" for the challenged employment action, Slattery v. Swiss Reinsurance

Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001), "the presumption of discrimination drops out," Roge

v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001), and the plaintiff must prove that the

legitimate reasons offered by the defendant were "not its true reasons but were a pretext for

discrimination."  Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).

At all times, the ultimate burden of persuasion remains with the plaintiff to show that the

defendant intentionally discriminated against the plaintiff.  Hicks, 509 U.S. at 507 (quoting

Burdine, 450 U.S. at 256).

To establish a prima facie case for discriminatory discharge under the ADA, the

Rehabilitation Act, or the CFEPA, a plaintiff must show that: (1) his employer is subject to the

ADA; (2) he is disabled within the meaning of the ADA; (3) he could perform the essential

functions of the job with or without reasonable accommodation; and (4) he was discharged

because of his disability.  Jacques v. Dimarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004) (citing

Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003)).  Individuals

with "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" are disabled within the meaning of the ADA.  Felix v. N.Y. City Transit Auth., 324 F.3d 102, 104 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2)(A)).  A plaintiff is also "disabled" within the meaning of the ADA if she has a "record" of such an impairment, 42 U.S.C. § 12102(2)(B), or is "regarded as having such an impairment."  42 U.S.C. § 12102(2)(C).  The determination of whether an individual is disabled under the ADA is made on an individualized, case-by-case basis.  Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151 (2d Cir. 1998).

The Supreme Court has set forth a three-part inquiry to determine whether a plaintiff is disabled under subsection (A) of the 42 U.S.C. § 12102(2).  See Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  First, a court must determine whether the plaintiff suffers from a physical or mental impairment.  Id.; Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).  Second, the court must "identify the life activity" upon which the plaintiff relies and "determine whether it constitutes a major life activity under the ADA."  Bragdon, 524 at 631.  "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i); see also Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002) (major life activities are "those activities that are of central importance to daily life.").  Third, the court inquires whether the impairment "substantially limited" a major life activity identified in step two.  Id.  To prevail upon a further showing of discrimination, a plaintiff must satisfy each of the three prongs.  Colwell, 158 F.3d at 641.

Plaintiff Conge's depression qualifies as a "mental impairment" which satisfies the first

prong of the test.  See 29 C.F.R. § 1630.2(h) ("Physical or mental impairment means: ... [a]ny

mental or psychological disorder, such as ... emotional or mental illness....").  Depression can

qualify as a disability for purposes of the ADA.  Oblas v. Am. Home Assur. Co., 199 F.3d 1323,

1999 WL 759026, at *2 (2d Cir. Sept. 24, 1999) (citing Criado v. IBM Corp., 145 F.3d 437, 442

(1st Cir. 1998).  Although Plaintiff Conge has not presented an affidavit from a physician or any

other evidence corroborating his testimony, he attested at his deposition that he had been

diagnosed with depression in 1998 and that he suffered a period of moderate to severe depression

beginning in January, 2003, and ensuing through his termination by Sikorsky.  (See Pl.'s Dep. at

25-29, 35.)  Sikorsky has presented no evidence which contradicts Conge's assertions of

disability at that time.  Conge has therefore satisfied the first prong of the Bragdon test.

Defendant contends, however, that Plaintiff Conge is not disabled under the ADA

because his claimed disability did not substantially limit any major life activity.  "Substantially

limit" means "[u]nable to perform a major life activity that the average person in the general

population can perform" or "[s]ignificantly restricted as to the condition, manner, or duration

under which an individual can perform a particular major life activity as compared to the

condition, manner, or duration under which the average person in the general population can

perform that same major life activity."  29 C.F.R. § 1630.2(j) (2001).  In determining whether an

individual is substantially limited in a major life activity, a court considers the following factors:

"[t]he nature and severity of the impairment; [t]he duration or expected duration of the

impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term

impact of or resulting from the impairment."  Id. §§ 1630.2(j)(2)(i)-(iii); see also Toyota Motor

Mfg., 534 U.S. at 195-96.  Plaintiff testified at his deposition that he was unable to concentrate at

work, had difficulty sleeping, was unable to leave the house for days at a time if not unable to get out of bed for months at a time. (Pl.'s Dep. at 112-13, 117-18.) A reasonable jury could therefore find that Plaintiff's depression substantially limited a major life activity. Cf. Colwell, 158 F.3d at 644 (where plaintiff only vaguely described his impairment and whose trouble sleeping was fairly ordinary, he "made no showing that his affliction is any worse than is suffered by a large portion of the nation's adult population"); MacGovern v. Hamilton Sunstrand Corp., 170 F. Supp. 2d 301, 310 (D. Conn. 2001) (plaintiff's depression did not substantially limit any major life activity where he could not work overtime but was otherwise generally able to work). Defendant argues that Conge could not have been substantially limited by his depression since he traveled to South Carolina to play golf and then to Mexico for a vacation with his family during his first protracted absence in 2003. (Def.'s Mot. for Summ. J. at 13.) Conge explained at his deposition, however, that his vacation plans had been made long before his condition worsened to an incapacitating state in early 2003 and that his doctor advised that the pre-scheduled trips might actually help his condition. (Pl.'s Dep. at 55.) Nothing about Conge's travels during this period—especially given his limited ability to function normally while on those trips (see id. at 55, discussing his inability to get out of bed one of the days of his golf trip)—negates Conge's inability to work, sleep, eat, or otherwise function normally during this extended period of time.

Defendant further argues that Plaintiff's employment record subsequent to his termination from Sikorsky belies his claim that his depression qualifies as a disability under the ADA. However, Plaintiff testified at his deposition that he has been treated by a psychiatrist and has taken medication for depression since 1998 and that he was committed as an inpatient at Yale-New Haven Hospital for severe depression in August of 2005, approximately 18 months

subsequent to his termination from Sikorsky.  Regardless of his ability to manage his disability for periods of time, Mr. Conge has suffered from a health disability over the course of many years, and this disability cannot be dismissed as a temporary psychological impairment.  Cf. Oblas,  1999 WL 759026, at *2 (citing Sanders v. Arneson Prods., 91 F.3d 1351, 1354 (9th Cir. 1996)) (plaintiff's depression did not qualify as ADA disability where it caused him to miss six months of work but did not have residual effects).  Plaintiff has therefore established the second element of his prima facie disability discrimination claim.

Defendant also moves for summary judgment on the ground that Plaintiff cannot establish the third element of a prima facie disability claim, that is, that he could perform the essential functions of his job even with a reasonable accommodation.  Numerous courts have held that attendance at work is an essential function of a job.  Lyons v. Legal Aid Soc., 68 F.3d 1512, 1516 (2d Cir. 1995) ("It is clear that an essential aspect of many jobs is the ability to appear at work regularly and on time."); see also Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994) ("an essential function of any government job is an ability to appear for work"); Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994) ("In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis"); Cino v. Sikorsky Aircraft, 42 F. Supp. 2d 147, 151 (D. Conn. 1998) ("[A]n employee must be present in order to perform the essential functions of a job."); Ezikovich v. Comm'n on Human Rights and Opportunities, 57 Conn. App. 767, 775 n.5 (2000) ("numerous federal courts have recognized that attendance at work is a necessary job function").  It is not reasonable to require a defendant to accommodate a plaintiff where she is "consistently unable to satisfy so basic a criterion" as appearing for work.  Cino, 42 F. Supp. 2d at 151.

In this case, Plaintiff conceded at his deposition that Sikorsky had accommodated his disability during his year-long period of severe depression by permitting him not to come to work. (Pl.'s Dep. at 151.) Plaintiff also stated at his deposition that attending work regularly was an essential function of his job at Sikorsky. (Id. at 98.) As a manager charged with overseeing critical tasks related to entire projects, programs, and operational units, Mr. Conge could not perform these duties without being physically present at work. (Trompetter Aff. ¶¶ 11-12.) A large portion of Conge's work involved classified military information which he could not access at home due to security considerations, thereby eliminating the possibility that he could work from home. (Id.; Pl.'s Dep. at 61-62.) Plaintiff's extended absence also prevented him from traveling to customer locations as was required of him from time to time (id.) and caused scheduling disruptions for his department. (Trompetter Aff. Attach. 3.) Absent any evidence presented by Plaintiff to the contrary, it appears that Plaintiff's inability to attend work on more than 160 days in 2003 made it impossible for him to perform the essential functions of his job, even when provided with a reasonable accommodation by his employer.

Furthermore, the ADA does not require an employer to hold a position open for an employee who fails to report to work or requests an indefinite leave of absence. Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 9 (2d Cir. 1999) (holding that the ADA does not require an employer to give an employee an indefinite leave of absence where there was no expectation that the employee would be able to return to work); Starr v. Time Warner, Inc., No. 07 Civ. 5871(DC), 2007 WL 4144627, at *4 (S.D.N.Y. Nov. 21, 2007) ("A medical leave would be unreasonable if, for example, 'the request is for a very long leave of absence, such as one year.'" (citing Powers v. Polygram Holding, Inc., 40 F. Supp. 2d 195, 201 (S.D.N.Y. 1999)));

Cousins v. Howell Corp., 113 F. Supp. 2d 262, 271 (D. Conn. 2000). Plaintiff has also failed to present any evidence that an accommodation exists that would have reasonably accommodated his disability. See Alenski v. Potter, No. CV-03-2179(SJF)(MLO), 2005 WL 1309043, at *17 (E.D.N.Y. May 18, 2005). Sikorsky's termination of Conge, following his extensive absences in 2003 and early 2004 and his inability to adjust to a part-time work schedule, therefore does not amount to a failure to reasonably accommodate him.

Plaintiff has therefore failed to show that he was a qualified individual who could perform the essential functions of his job; accordingly, he has not established a prima facie case of disability discrimination. As such, the Court does not need to inquire as to whether Sikorsky has offered a legitimate non-discriminatory reason for his termination or whether Conge can show that such a reason is pretext for discrimination. Sikorsky is therefore entitled to summary judgment on Plaintiff's ADA, Rehabilitation Act, and CFEPA claims.

**B.     Title VII**

Defendant Sikorsky moves for summary judgment on Plaintiff's Title VII discrimination claim because he has not established a prima facie case. Title VII prohibits discrimination on the basis of an individual's "race, color, religion, sex, or national origin...." 42 U.S.C. § 20000e-2(a)(1). To establish a prima facie case of discrimination under Title VII, a plaintiff must show that; "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination[.]" Woodman, 411 F.3d at 76. Plaintiff does not allege that he is a member of a protected class (see Compl.), and he has not presented any evidence that Sikorsky terminated his

employment because of his race, color, religion, sex, or national origin.  In fact, Plaintiff

admitted at his deposition that race was not a factor in his termination.  (See Pl.'s Tr. at 139.)

Accordingly, Plaintiff has not stated a cause of action under Title VII, and Defendant is entitled

to summary judgment on the Second Count of the Complaint.

### C.    Intentional Infliction of Emotional Distress

Defendant moves for summary judgment on the Fifth Count of Plaintiff's complaint,

alleging a claim of intentional infliction of emotional distress, because Conge's alleged conduct

was not "extreme and outrageous."  To prevail on a state tort claim of intentional infliction of

emotional distress, a plaintiff must establish: "(1) that the defendant intended to inflict emotional

distress or knew or should have known that emotional distress was the likely result of its

conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was

the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff

was severe."  Levy v. Kick, No. 3:06cv390 (PCD), 2007 WL 2492036, at *10 (D. Conn. Aug. 30,

2007) (citing Appleton v. Bd. of Educ., 245 Conn. 205, 210 (2000)).  The standard for a claim of

intentional infliction of emotional distress is strict and hinges on whether the conduct satisfies

the requirement of "extreme and outrageous behavior."  Id.; Appleton, 245 Conn. at 210.  The

"extreme and outrageous" standard requires that the conduct "exceed[ ] all bounds usually

tolerated by decent society, of a nature which is especially calculated to cause, and does cause,

mental distress of a very serious kind."  Petyan v. Ellis, 200 Conn. 243, 254 n. 5, 510 A.2d 1337

(1986).  After recitation of allegations to an average representative of the community, such

recitation would arouse the anger of the representative and cause him or her to exclaim

"Outrageous!"  Kilduff v. Cosential., Inc., 289 F. Supp. 2d 12, 21 (D. Conn. 2003) (citing Carrol

v. Allstate Ins. Co., 262 Conn. 433, 442, 815 A.2d 119, 125 (2003)); Appleton, 254 Conn. at 210.; 1 RESTATEMENT (SECOND), TORTS § 46, cmt (d) (1965)). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Appleton, 254 Conn. at 211 (internal citations omitted). Whether conduct meets this standard requires determination by the court in the first instance. See Collins v. Gulf Oil Corp., 605 F. Supp. 1519, 1522 (D. Conn. 1985). If reasonable people could differ as to whether the conduct constitutes extreme or outrageous behavior, the question is one for the jury. Kilduff, 289 F. Supp. 2d at 22 (citing Appleton, 254 Conn. at 210).

Plaintiff Conge has not established that Sikorsky's conduct in this case was extreme or outrageous. "In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (internal citation omitted). Routine employment action, even if undertaken with improper motivations, does not constitute extreme or outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner. Id.; see also Sousa v. Roque, No. 3:05-cv-822 (JCH), 2005 WL 3543721, at *4 (D. Conn. Dec. 16, 2005) (defendants' refusal to allow plaintiff to extend his medical leave and their rejection of his request to work from home, as alleged, are routine employment actions and therefore not extreme or outrageous); Hill v. Pinkerton Security & Investigation Servs., Inc., 977 F. Supp. 148, 160 (D. Conn. 1997) (paying an African-American female less money than her counterparts and disciplining, reprimanding, and transferring her to two other locations in response to her wage investigation was not extreme and outrageous conduct); White v. Martin, 23 F. Supp. 2d 203,

-18-

208 (D. Conn. 1998), aff'd, 198 F.3d 235 (2d Cir. 1999) (employer's alleged discrimination, denial of a promotion, discipline, and harassment based on plaintiff's gender not extreme or outrageous). "Although employment discrimination is illegal, it does not per se give rise to a claim for intentional infliction of emotional distress." Allen v. Egan, 303 F. Supp. 2d 71, 78 (D. Conn. 2004). Even if Plaintiff Conge were improperly terminated from his employment because of his disability, a reasonable person could not find that Sikorsky engaged in outrageous conduct. Koestner v. Derby Cellular Prods., – F.2d –, No. 3:06-cv-00188 (VLB), 2007 WL 2935486, at *4 (D. Conn. Oct. 5, 2007). Plaintiff has made absolutely no showing that Sikorsky treated him outrageously or egregiously at any point during his employment or termination. Regardless of the motive of Sikorsky's decision to terminate Conge, Sikorsky's communications with Conge throughout the period of his disability appear to have been civil and reasonable. Accordingly, Conge cannot proceed with his intentional infliction of emotional distress claim, and summary judgment is granted to Sikorsky on the Fifth Count of Plaintiff's Complaint.

### D. Common Law Wrongful Discharge Claim

The Sixth Count of Plaintiff's Complaint, alleging a common law claim for wrongful discharge in violation of public policy, must fail as a matter of law. To state a claim for common law wrongful discharge in Connecticut, a plaintiff must allege that his discharge violated an "explicit statutory or constitutional provision" or "contravened a ... judicially conceived notion of public policy." Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 699, 802 A.2d 731 (2002). However, a plaintiff cannot seek a remedy under a wrongful discharge theory when such a remedy is already provided in a statute such as the ADA. See Honeck v. Nicolock Paving Stones of New England, LLC, No. Civ.3:04CV1577 (JBA), 2005 WL 1388736, at *2 (D. Conn.

June 10, 2005) (citing Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178, 182 (2000)); Friel v. St. Francis Hosp., No. Civ. 3:97CV803 (DJS), 1997 WL 694729, at *2-3 (D. Conn. Oct. 31, 1997) (dismissing plaintiff's disability-based discharge claim due the availability of remedies under the ADA and the CFEPA). In this case, Conge has alleged only that the "actions of the defendant constitute violations [sic] wrongful termination in contravention of public policy." (Compl. ¶ 26, Sixth Count.) He also claims that Defendant wrongfully terminated his employment in violation of the ADA, the Rehabilitation Act, the CFEPA, and Title VII. Because he has pleaded a violation of numerous statutes that provide adequate remedies in these circumstances, Connecticut law forecloses his common law wrongful discharge claim. Sturm v. Rocky Hill Bd. of Educ., No. 3:03CV666 (AWT), 2005 WL 733778, at * 4 (D. Conn. March 29, 2005) ("The Connecticut Supreme Court has held that a plaintiff who is not entitled to protection under a statute 'cannot use the public policy embodied therein to support her claim of wrongful discharge based upon a violation of public policy.'" (quoting Burnham, 252 Conn. at 182-83, 745 A.2d 789))). Plaintiff's wrongful discharge claim therefore fails as a matter of law, and summary judgment is hereby granted to Defendant on the Sixth Count of Plaintiff's Complaint.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Doc. No. 41] is hereby **granted.** Judgment is entered for Defendant on all of Plaintiff's claims. The Clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, this  11th day of December, 2007.

_____/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court